UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.  MJG 03 CV 108 |
| v. | ) |
| | ) |
| JAGUAR BUSINESS CONCEPTS, LP, | ) |
| dba LIBERTYMALL.COM, et al., | ) |
| | ) |
| Defendants. | ) |

**MOTION AND MEMORANDUM OF PLAINTIFF FEDERAL TRADE COMMISSION FOR A DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AGAINST DEFENDANT JACQUELINE A. DEMER**

Pursuant to the Court's May 13, 2003 Order and Rules 54(b) and 55(b)(2) of the Fed R. Civ. P., the plaintiff Federal Trade Commission ("FTC" or "Commission") moves this court for a judgment by Default and Permanent Injunction as to Defendant Jacqueline A. Demer ("Demer") in connection with the FTC's claims against Demer, Jaguar Business Concepts, L.P., dba Libertymall.com ("Jaguar"), and Jaguar's General Partner, Cheyenne Investment Alliance, L.L.C ("Cheyenne" and together with Jaguar and Demer, the "Defendants") for their advertising, marketing and sale of fake International Drivers Permits ("IDP's").  The proposed order, as submitted herewith, includes an order for permanent injunction and a judgment against Defendant Demer in the amount of $5,365 or such other amount that the Court deems proper.  The $5,365 judgment represents the amount paid by the 91 customers who

purchased Defendants' IDP's, as set forth by Cheyenne and Jaguar in their financial disclosures provided to the Commission pursuant to the Stipulation and Order for Preliminary Injunction with an Accounting, Expedited Discovery and Other Equitable Relief, which Stipulation was agreed to by the parties and entered by the Court on January 23, 2003 ("Stipulation and Order").

## MEMORANDUM IN SUPPORT

I.     PROCEDURAL HISTORY

On January 13, 2003, the Commission filed suit for injunctive relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), against Jaguar, Cheyenne and Demer, individually and as Member/Manager of Cheyenne. The Complaint alleges that the Defendants violated Section 5 of the FTC Act in connection with the sale of IDP's by misrepresenting (1) that Defendants' IDP authorizes consumers to drive legally in the United States; (2) that consumers who purchase Defendants' IDP may use it to avoid points for traffic violations and avoid sanctions for driving with a suspended or revoked driver's license; and (3) that Defendants' IDP can be used in the United States as an identification document in the same ways a person can use a government-issued photo identification document.

On January 17, 2003, the parties signed the Stipulation and Order, whereby Defendant Demer stipulated to venue and personal jurisdiction. The FTC's Summons and Complaint were formally served on Defendant Demer on January 22, 2003. [1]   Defendant Demer has failed to timely answer the

---

[1] In addressing an assertion by Defendant Demer that she was not properly served, the Court's May 1, 2003 Order stated, "The Plaintiff has effectively served Demer with process by personally serving her with the requisite documents."

Complaint by the date ordered by the Court, and all other responsive pleadings have been denied.

On February 10, 2003, Defendant Demer filed a motion to extend time for her Answer, to which the Commission promptly filed its opposition. While Defendant Demer's motion to extend the time to file her Answer was pending, she filed with the Court numerous documents that appear to be successive Motions to Dismiss. First, on March 14, 2003, Defendant Demer filed a Motion to Dismiss Presenting Defenses of Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, Lack of Proper Service of Process and Failure to State a Claim Under Federal Rules of Civil Procedure rules 12(b) and 12(h), to which motion the Commission responded on March 31, 2003. Then on March 26, 2003, before the Commission's response to the Motion to Dismiss was due, she filed an Affidavit of Lawful Authority Request[2]. The Commission timely filed its opposition to the Motion to Dismiss and filed a motion to strike the Affidavit of Lawful Authority Request as "insufficient defenses and otherwise redundant, immaterial, and impertinent."

On April 2, 2003, the Court ruled on Defendant Demer's motion for an extension to file the Answer. The Court stated that due to the time the motion was pending, she received a two month

---

[2] Defendant Demer sent "Affidavits of Lawful Authority Requests" to FTC Chairman Timothy J. Muris, FTC Commissioners Sheila F. Anthony, Mozelle W. Thompson, Orson Swindle, Thomas B. Leary, FTC General Counsel William E. Kovacic, Assistant Director of FTC's Bureau of Consumer Protection, Enforcement Division, James Reilly Dolan, FTC counsel Patricia F. Bak and Adam B. Fine, and the Commission ("FTC Officials"). The Affidavit of Lawful Authority Request documents were a collection of statutes and miscellaneous legal provisions that Defendant Demer wanted the FTC officials to affirm. According to the document, failure to affirm would result in each FTC Official admitting to each of the "legal affirmations: set forth in each of the Affidavits directed to them. The FTC Officials responded by filing the Motion to Strike, and not by signing the affidavits because the affidavits were unnecessarily repetitive of her earlier filed Motion to Dismiss, were superfluous and cited statutes and cases that have no relevance to the case at bar.

deferral and accordingly ordered her to file an Answer by April 21, 2003. In that Order, the Court reminded Defendant Demer that "she must hereafter timely meet her obligations with regard to the instant case." Then, on April 11, 2003, Defendant Demer filed a Notice of Filing Notice of Default whereby Defendant Demer asserted that because the FTC Officials did not each sign their respective Affidavits of Lawful Authority Requests, the FTC agrees that the FTC does not, among other things, "have the legal and lawful authority to investigate Jacqueline Demer, a living breathing flesh and blood woman, a natural person, endowed with the unalienable rights . . ." The Court issued an Order on April 17, 2003, treating the Notice of Default as a Motion to Dismiss, which the Court denied.

    Next, on April 21, 2003, Defendant Demer sent a letter to the Court contending that the Court's April 17, 2003 Order was not meant for her because the envelope from the Court was addressed to Mr. Demer and not Ms. Demer; that both the FTC and the Court lack jurisdiction over her; and that the Judge also must sign an Affidavit of Lawful Authority presented by her. On April 25, 2003, the Court treated the letter as another Motion to Dismiss and denied it without further briefing. The Court's April 25, 2003 Order also found Defendant Demer's argument that FTC and federal court jurisdiction does not extend to her to be "meritless" and held that by May 9, 2003, Defendant Demer shall file an Answer to the Complaint.

    On April 29, 2003, Demer filed a Declaration, containing over 170 pages including exhibits, that stated, among other things, Defendant Demer's views on jurisdiction and that the presiding Judge must execute an Affidavit of Lawful Authority Request. On April 30, 2003, the Court, in response to this Declaration, treated it as a Motion to Dismiss and denied that motion and also set forth the standard by which Defendant Demer must file documents. These requirements include a title indicating the nature of

the document, clear indication as to relief requested and the basis upon which the Court should grant the relief and shall not include matters or contentions previously submitted to the Court. Additionally, the Clerk shall, prior to filing any paper submitted by Defendant Demer, present the document to the Court for a ruling as to whether the document shall be filed or returned to Defendant Demer.

On May 1, 2003, the Court denied Defendant Demer's March 18, 2003, Motion to Dismiss, stating that the Court can properly exercise personal jurisdiction over Defendant Demer, the Court has subject matter jurisdiction over the instant case, venue is proper, service of process was adequate and that the Court "most definitely cannot find Plaintiff unable to prove any conceivable set of facts that would entitle it to prevail." On May 7, 2003, the Court granted Plaintiff's motion to strike Defendant Demer's Affidavit of Lawful Authority.

On May 8, 2003, Defendant Demer filed another Motion to Dismiss, claiming again, among other things, that she "cannot reasonably formulate a proper response to the incomprehensible complaint, and plaintiff has failed to expedite plaintiff's case with due diligence and file a verified complaint, elements essential to establishing jurisdiction of this court..." Finally, on May 13, 2003, the Court issued an Order allowing this Motion to Dismiss to be filed and denied this Motion. The Court also stated that Defendant Demer has failed to timely file an Answer to the Complaint and that Plaintiff may move for a default judgment against Defendant Demer. The FTC has not received an Answer since that time.[3] On

---

[3] Indeed, Defendant Demer has in no other way participated in this litigation. She refused to agree to the proposed scheduling order saying in a correspondence to counsel for the FTC, "Frankly, your schedule does not interest me, nor does it have any bearing on my schedule." She also has not complied with the date by which parties must exchange Initial Disclosures set forth in the Court's April 17, 2003 Scheduling Order, even though the FTC has provided its Initial Disclosures to Defendants.

May 28, 2003, the Commission filed a Request for Entry of Default Against Defendant Jacqueline A. Demer.  On May 29, 2003, the Clerk of the Court entered an Order of Default against Defendant Demer.  That same day, the Commission caused the Order of Default to be served on Defendant Demer and Cheyenne and Jaguar.  See Declaration of Plaintiff's Counsel in Support of Motion and Memorandum of Plaintiff Federal Trade Commission for a Default Judgment and Order for Permanent Injunction Against Defendant Jacqueline A. Demer, attached hereto as Exhibit A (Bak Dec") at ¶ 6.

## II.    APPLICABLE LEGAL STANDARDS UNDER THE FTC ACT

### A.    DECEPTIVE REPRESENTATIONS UNDER SECTION 5

Section 5 of the FTC Act prohibits "deceptive acts or practices in or affecting commerce. 15 U.S.C. §45(a).  An act or practice is deceptive if consumers, acting reasonably under the circumstances, are, as a result of the representation, omission or practice likely to be misled about a material fact to their detriment.  FTC v. World Travel Vacation Brokers, 861 F.2d 1020, 1029 (7th Cir. 1988).  Thus, misrepresentations or omission of material facts made to induce the purchase of good or services constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act.  See e.g., FTC v. Amy Travel Service, Inc., 875 F.2d 564, 573 (7th Cir. 1989), cert. denied, 493 U.S. 954 (1989).[4]  If

---

[4]  The Commission need not prove reliance by each purchaser misled by the Defendants. "Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of [Section 13(b)]."  FTC v. Figgie Int'l, Inc., 994 F.2d 595, 605 (9th Cir.1993), cert. denied, 510 U.S. 1110 (1994) (citations omitted).   Rather, a "presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product."  Id. at 605-6; see also FTC v. SlimAmerica,Inc., 77 F. Supp. 2d 1263, 1275 (S.D. Fla.1999).

consumers are likely to have chosen differently but for the deception, then a misrepresentation is material. FTC v. Southwest Sunsites, Inc.,105 F.T.C. 7, 149 (1985), aff'd, 785 F.2d 1431 (9th Cir 1986), cert. denied, 479 U.S. 828 (1986); Cliffdale Associates, 103 F.T.C. 110, 165 (1984). Express claims and deliberately made implied claims are presumed to be material. SlimAmerica, 77 F. Supp. 2d at 1272; FTC v. Wilcox, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995); In re Thompson Medical Co., 104 F.T.C. 648, 816 (1984), aff'd, 791 F.2d 189 (D.C. Cir. 1986), cert. denied, 479 U.S. 1086 (1987). Defendants found to have violated Section 5 of the FTC Act are jointly and severally liable. E.g., Amy Travel, 875 F.2d at 570-75.

**B.    REMEDIES UNDER THE FTC ACT**

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), specifically authorizes a district court to grant permanent injunctive relief to enjoin violations of the FTC Act. FTC v. Pantron, 33 F.3d 1088, 1102 (9th Cir. 1994) cert. denied 514 U.S. 1083 (1995); FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1110-11 (9th Cir. 1982). Pursuant to Section 13(b), in a proper case, the Court is empowered to exercise the full breadth of its equitable authority, and may impose equitable remedies such as restitution and disgorgement. Singer, 668 F.2d at 1113; Amy Travel, 875 F.2d at 571-72; FTC v. Gem Merchandising Corp., 87 F.3d 466, 468-70 (11th Cir. 1996); FTC v. Security Rare Coin & Bullion Corp., 931 F.2d 1312, 1314-15 (8th Cir. 1991). A case such as this, where there is evidence of persistent and ongoing fraud and deception qualifies as a "proper case" under Section 13(b). See, e.g., World Travel Vacation Brokers, 861 F.2d at 1028; Singer, 668 F.2d at 1113; FTC v. Virginia Homes Mfg. Corp., 509 F. Supp. 51, 54 (D. Md.

1981).[5]

Redress under the FTC Act has been described as "the monetary equivalent of rescission." FTC v. Kitco of Nevada, Inc., 612 F. Supp. 1282, 1292-1295 (D. Minn. 1985). Defendants may be found liable for the full amount required effectively to rescind their contracts with consumers even though this amount may exceed their unjust enrichment. Id. at 1295-96. To rescind the contracts here, the Court would have to award a judgment totaling the entire amount of Defendants' proceeds.

Restitution under Section 13(b) also may require defendants to pay an amount equal to their unjust enrichment. Pantron 33 F.3d at 1103. Disgorgement may also take the form of consumers' losses as reflected by the purchase price paid by consumers, and not by defendants' net profits. FTC v. Febre, 128 F.3d 530, 536 (7th Cir. 1997). Any risk of uncertainty in the calculation of consumer redress falls upon the wrongdoer. Id. at 535. The exercise of the Court's broad equitable authority is particularly appropriate where, as here, the public interest is at stake. FTC v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989).

---

[5] Because the Commission brings this case pursuant to the second proviso of Section 13(b), its complaint is not subject to the procedural and notice requirements in the first proviso. FTC v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1434 (11th Cir. 1984) ("Congress did not limit the court's powers under the [second and] final proviso of § 13(b) and as a result this Court's inherent equitable powers may be employed to issue a preliminary injunction, including a freeze of assets, during the pendency of an action for permanent injunctive relief"); Singer, 668 F.2d at 1111 (holding that routine fraud cases may be brought under second proviso, without being conditioned on first proviso requirement that the Commission institute an administrative proceeding). The first proviso of Section 13(b) addresses the circumstances under which the Commission can seek preliminary injunctive relief before or during the pendency of an administrative proceeding.

C.  INDIVIDUAL LIABILITY UNDER THE ACT

An individual defendant may be held personally liable for injunctive relief if he either participated directly in a business' violation of Section 5 of the FTC Act or he had the authority to control those acts. FTC v. Publishing Clearing House, Inc. 104 F.3d 1168, 1170 (9th Cir 1997), aff'd, 105 F.3d 407 (9th Cir. 1997); Gem Merchandising, 87 F.3d at 470; Amy Travel, 875 F.2d at 573-74; In re Rentacolor, Inc., 103 F.T.C. 400, 438 (1984); Thiret v. FTC, 512 F.2d 176 (10th Cir. 1975); FTC v. The Sporicidin Co., 1992-1 Trade Cas. (CCH) ¶ 69,768 (D. Md. 1992). In general, an individual's status as a corporate officer of a small, closely held corporation gives rise to a presumption of control for purposes of liability. More particularly, assuming the duties of a corporate officer are probative of an individual's participation or authority. Amy Travel, 875 F.2d at 573; The Sporicidin Co., 1992-1 Trade Cas. ¶ 69,768 at 3 (D. Md.1992). Requisite authority can be inferred from activities that exhibit planning, decision making and supervision. See Southwest Sunsites, 785 F.2d at 1439.

An individual may also be held liable for monetary redress for corporate practices if the individual had or should have had knowledge or awareness of the corporate defendants' misrepresentations. FTC v. Affordable Media, LLC, 179 F.3d 1228, 1231 (9th Cir. 1999); Publishing Clearinghouse, 104 F.3d at 1170-71; Gem Merchandising, 87 F.3d at 470; Amy Travel, 875 F.2d at 574. The FTC is not required to show that the individual defendants intended to defraud consumers in order to hold them personally liable. Rather, the FTC need only demonstrate that the individual had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such representations, or an awareness of a high probability of fraud coupled with intentional avoidance of the truth. Affordable Media,LLC, 179 F.3d at 1234; Publishing Clearing House, 104 F.3d at 1170-71; Amy

Travel, 875 F.2d at 574. Participation in corporate affairs is probative of knowledge. Affordable Media, LLC, 179 F.3d at 1235; Amy Travel, 875 F.2d at 564; FTC v. Sharp, 782 F. Supp. 1445, 1450 (D. Nev. 1991).

**III.   UNDER THE FTC ACT, DEMER IS LIABLE FOR THE DECEPTIVE REPRESENTATIONS**

"Upon default, well-pled allegations in a complaint as to liability are taken as true, while allegations to damages are not." Ralph v. Long, 2001 U.S. Dist. LEXIS 8197 (D. Md. 2001). "As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiffs as to each cause of action alleged in the complaint." FTC v.Sharp, 782 F. Supp at 1453 (citing U.S. v. DiMucci, 879 F.2d 1488, 1497 (7th Cir. 1989)). Moreover, the Commission has presented ample evidence demonstrating that Defendant Demer violated the FTC Act by misrepresenting the attributes of Libertymall's IDP to consumers.

**A.   DEFENDANTS MISREPRESENTED THE USE AND VALIDITY OF IDP'S**

The Complaint alleges that Defendants operated together as part of a common enterprise to advertise, market and sell fake IDP's through libertymall.com and through incoming telemarketing calls. (Complaint ¶ ¶ 8, 18). Defendants engaged in false representations about the use and validity of IDP's, including that 1) Defendants' IDP's authorize consumers to drive legally in the United States (Complaint ¶¶ 20, 21, 26); 2) consumers who purchase IDP's may use them to avoid points for traffic violations and avoid sanctions for driving with a suspended or revoked driver's license (Complaint ¶ 22, 29); and 3) Defendants' IDP's can be used in the United States as an identification document in the same way as a government issued photo identification document, such as a driver's license. (Complaint ¶ 23, 32).

Complaint paragraphs 18-25 detail Defendants' false and misleading statements and how Defendants' deceptive marketing and sales of their IDP's were made. The Complaint explains how these acts and assertions by Defendants regarding IDP's are deceptive, the purposes an IDP serves, what a valid IDP is and what rights it confers. (Complaint ¶¶ 10-16).

The Complaint alleges that, contrary to Defendants' false representations, in truth, a valid IDP does not confer driving privileges in the country of issuance; it is not a substitute for having a valid driver's license; it will not protect individuals from sanctions for driving with a suspended or revoked license; and it will not insulate drivers from incurring points for traffic violations. (Complaint ¶ 17). Nor can a validly issued IDP be used in the same way as a government issued photo identification document. Id. These false and misleading representations constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act. (Complaint ¶¶ 28, 31 and 34). The Complaint alleges that "at all times relevant to this complaint, Defendants' course of trade is in or affecting commerce within the meaning of Section 4 of the FTC Act, 15 U.S.C. § 44." (Complaint ¶ 9). Finally, the Complaint alleges consumer injury as a result of Defendants' violations of the FTC Act. (Complaint ¶ 35). In sum, the Commission has adequately pled a claim for violation of Section 5(a) of the FTC Act.

### B. DEMER IS INDIVIDUALLY LIABLE FOR THESE VIOLATIONS

As set forth in Section II C. *supra*, Defendant Demer can be held individually liable for the actions of the Corporate Defendants. The Complaint alleges that Defendants (including Demer) operated as part of a common enterprise to market false IDP's. (Complaint ¶ 8). Cheyenne is a Georgia limited liability company and the general partner of Jaguar. (Complaint ¶ 6). With certain exceptions, under Georgia law, a member of a Georgia limited liability company, or where management of the

limited liability company is vested in one or more managers, a manager is an agent of the limited liability company for purposes of its business and affairs and may execute any instrument and bind the limited liability company. O.C.G.A. § 14-11-301 (2002). Neither the Articles of Organization of a Georgia limited liability company nor any other written operating agreement thereof shall eliminate or limit the liability of a member or manager for intentional misconduct or a knowing violation of law. O.C.G.A. § 14-11-305.

The Court noted in its May 1, 2003 Order, "Demer took substantial personal action in furtherance of Defendant Jaguar Business Concepts, L.P.'s efforts to market 'International Driving Licenses." Defendant Demer was the Member/Manager of Cheyenne from the time Defendants began selling fake IDP's through April 2, 2003 (Complaint ¶ 7; Bak Dec. ¶ 11), and as such, directed, controlled, formulated or participated in the acts and practices alleged in the Complaint. (Complaint ¶ 7).[6]

## IV. OTHER FACTS NECESSARY TO ENTER A DEFAULT JUDGMENT

Recognition of the following facts are also necessary in order to enter a default judgment against

---

[6] Although the Commission has not yet had the opportunity for discovery on the merits, as is clear from the Declaration of Denise Owens ("Owens Declaration") and the Declaration of Ronald D. Lewis ("Lewis Declaration") submitted in support of Plaintiff's Memorandum of Points and Authorities in support of Motion for TRO and other relief, in her capacity as Member/Manager of Cheyenne, Defendant Demer took specific acts in furtherance of Defendants' enterprise to advertise, market and sell IDP's through libertymall.com. Defendant Demer filed Jaguar's Certificate of Limited Partnership with the State of Pennsylvania (Owens Declaration ¶ 3), established the fictitious name www.libertymall.com with the State of Pennsylvania (Owens Declaration ¶ 4) and established the telephone service for the toll-free number set up to ring at the Monkton, Maryland address from which libertymall.com sent invoices and received payment for the fake IDP's sold by Defendants. (Owens Declaration ¶ 9, Lewis Declaration ¶¶ 4, 5). She also set up bank accounts on behalf of Jaguar at the Pennsylvania State Bank, in which IDP payments were deposited and from which Defendant Demer withdrew substantial amounts of money. (Lewis Declaration ¶¶ 8, 9, 10).

Defendant Demer. Defendant Demer is not an infant or incompetent person, in the military, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Bak Dec. ¶¶ 8-10).

Defendant Demer has not filed an Answer to the Complaint by the Court imposed May 9, 2003 deadline or by the date of this Motion.

A default judgment against less than all defendants is appropriate in this case because, under the FTC Act, liability is joint and several. Amy Travel, 875 F.2d at 570-75. A default judgment against one but not less than all defendants where the liability is joint and several is proper because there is virtually no possibility of inconsistent judgments against the defendants. In re Uranium Antitrust Litigation, 617 F.2d 1248, 1257 (7th Cir. 1980). Each defendant can be held "entirely responsible for the damage resulting from [the] concerted conduct." Id.

## V.  THE PROPOSED ORDER

The evidence cited above shows that Defendant Demer violated Section 5 of the FTC Act by using material misrepresentations of a type that could be, and in this case were, relied upon by reasonable consumers who suffered the injury of purchasing Defendants' IDP.

A permanent injunction is necessary to prevent Defendant Demer from disseminating additional misrepresentations. Without the injunction, Defendant Demer would be free to resume her deceptive scheme. If Defendant Demer were defending this lawsuit she would face a stringent test to show that she would not resume her illegal behavior. Affordable Media, LLC, 179 F.3d at 1238. Because she cannot meet this burden, the Court should issue the injunction.

Accordingly, the proposed "Default Judgment and Order for Permanent Injunction as to Defendant Demer" ("Proposed Order") includes comprehensive injunctive relief that bears a reasonable

relation to the default defendant's unlawful practices. See Litton Industries, Inc. v. FTC, 676 F.2d 364, 370 (9th Cir. 1982) (reasonable fencing-in provisions serve to "close all roads to the prohibited goal, so that [the FTC's] order may not be bypassed with impunity" (citation omitted)). Paragraph I of the Proposed Order bans Defendant Demer from marketing, advertising, promoting, offering for sale, selling or distributing any IDP or any other Identification Document, False Identification Document, Identification Template[7] or related materials and from assisting others in such practices. A ban on the sale of IDP's and other False Identification Documents is appropriate because such practices do not constitute legitimate business activity. See 18 U.S.C. § 1028. See also FTC v. Yad Abraham, et. al., No. EDCV 03-0030-VAP (C.D. Ca. Apr. 29, 2003) (issuing default judgment and finding ban appropriate (opinion attached as **Attachment 3** to Bak Dec.). The Court has the authority to grant such a ban to ensure defendants engage in legitimate business activities.[8]

Paragraph II prohibits Defendant Demer from misrepresenting or assisting others in

---

[7] Identification Document, False Identification Document and Identification Template have the meanings set forth in the Definitions section of the Proposed Order.

[8] See, e.g., FTC v. Micom Corp., 1997-1 Trade Cas. (CCH) ¶ 71,753 (S.D.N.Y. 1997)(ban on offering application preparation services for licenses or permits issued by U.S. government and investment opportunities involving such licenses or permits); FTC v. International Computer Concepts, Inc., 1995-2 Trade Cas. (CCH) ¶ 71,178 (N.D. Ohio 1995) (ban on marketing of franchises or business opportunities); FTC v. NCH, Inc., 1995-2 Trade Cas. (CCH) ¶ 71,114D. Nev. 1995), aff'd, 106 F.3d 407 (9th Cir. 1997) (ban on prize-promotion telemarketing); FTC v. Publishing Clearing House, Inc., 1995-1 Trade Cas. (CCH) ¶ 71,006 (D. Nev. 1995), aff'd, 106 F.3d 407 (9th Cir. 1997) (ban on prize-promotion telemarketing); FTC v. Wilcox, 926 F. Supp. 1091 (S.D. Fla. 1995) (ban on direct mail marketing of prize-promotions); FTC v. Jordan Ashley, Inc., 1994-1 Trade Cas. (CCH) ¶ 70,570 (ban on marketing of franchises or business opportunities); FTC v. Wetherill, 1993-1 Trade Cas. (CCH) ¶ 70,276 (C.D. Cal. 1993) (ban on all future telemarketing); FTC v. duPont, 1992-2 Trade Cas. (CCH) ¶ 69,898 (E.D. Pa. 1992) (ban on marketing of modeling, acting, or employment related goods or services).

misrepresenting: (1) that any IDP, False Identification Document or other Identification Document authorizes consumers to drive legally in the United States or in any other country; (2) that consumers who purchase any IDP, False Identification Document or other Identification Document may use it to avoid points for traffic violations; (3) that consumers who purchase any IDP, False Identification Document or other Identification Document may use it to avoid sanctions for driving with a suspended or revoked government issued driver's license; (4) that any IDP, False Identification Document or other Identification Document can be used in the United States or any other country as an identification document in the same ways a person can use a government-issued photo identification document; (5) that any IDP, False Identification Document or other Identification Document has been issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government, political subdivision of a foreign government, an international governmental or international quasi governmental organization; and (6) that she can assist others in concealing or altering their actual identity, residence or address for an IDP, False Identification Document or other Identification Document.

     The Proposed Order also contains various, standard provisions to ensure enforceability: a provision requiring maintenance of records for eight years after engaging in a covered activity (Paragraph VI); an order distribution requirement (Paragraph IX); a provision requiring Defendant Demer to notify the Commission of any changes in employment or residence status (Paragraph VIII); and a provision permitting Commission access to Defendant Demer's offices to inspect records and interview employees, and to pose as consumers to monitor representations (Paragraph VII).

     The monitoring provisions are proper to ensure compliance with the permanent injunctive

provisions, discussed above.  See, e.g., FTC v. U.S. Sales Corp., 785 F. Supp. 737, 754 (N.D. Ill. 1992) (court recognized need for monitoring by the Commission to ensure adequate compliance); Sharp 782 F. Supp. at 1456-57 (default judgment included similar monitoring provisions.)

In addition to injunctive relief, the Proposed Order contains a provision for monetary relief against Defendant Demer.  Specifically, the Commission seeks a judgment in the amount of $5,365, which sum, according to the financial information provided to the Commission by the Corporate Defendants, represents the amount of money paid by consumers to the Defendants for the IDP's.  No particular procedure need be followed by the Court in considering the amount of monetary relief in a proposed default judgment.  Fed R. Civ. P. 55(b)(2) provides in part:

> "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper[.]"[9]

The Courts have generally held that the trial judge has considerable discretion in deciding whether or not to conduct a hearing on the issue of the amount of monetary liability.  See, e.g., HMG Property Investors v. Parque Industrial Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988) (affirming default judgment entered without a hearing on amount of liability); Kitco, 612 F. Supp. at 1297 (hearing not required before entry of default);but cf. United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979) (case

---

[9] Fed R. Civ. P. 55(b)(2) further provides that the court "shall accord a right of trial by jury to the parties when and as required by any statute of the United States." (Emphasis added). A jury trial to determine damages would not be proper in this case because there is no right to a jury in the "essentially equitable matter" of the FTC "suing under Section 13(b) [of the FTC Act] for a permanent injunction and for ancillary relief in the form of rescission of contracts and restitution for injured consumers." Kitco, 612 F. Supp. at 1280-81.

remanded for hearing on damages "or a demonstration by detailed affidavits establishing the necessary facts"); Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985) (hearing required for default judgment unless amount claimed is a liquidated sum or one capable of mathematical calculation.").

     In addition to injunctive and monetary relief, the Proposed Order also sets forth prohibited activities and affirmative obligations of Defendant Demer, based on the past conduct of Defendant Demer with respect to the FTC Officials. Defendant Demer is prohibited from asserting that any FTC Official or any other FTC employee, commissioner, attorney, officer, agent, representative, successor or assign (1) have infringed any copyright or common law trademark rights Defendant Demer purports to have in her name, signature or otherwise; (2) have otherwise injured Defendant Demer; (3) owe Defendant Demer any damages, penalties, monies or fees of any kind for infringing any copyright or common law trademark rights Defendant Demer purports to have in her name, signature or otherwise; or (4) have granted Defendant Demer a security interest in their property. Additionally, Defendant Demer is required to take all steps necessary to insure that any filings or statements made by Defendant Demer or on her behalf with or to any court, public office, publication or individual regarding FTC Officials or any other FTC employee, commissioner, attorney, officer, agent, representative, successor or assign, including but not limited to any U.C.C. filings, liens, and notices, are withdrawn, removed and declared to be null and void and of no legal effect whatsoever. The reason for these prohibitions stem from the harassing documents Defendant Demer has sent to FTC personnel asserting that FTC personnel have violated her common law trademark and copyright rights in her name, signature or otherwise.[10]

---

[10] On January 21, 2003, the FTC Officials each received a document entitled, "Notice of Written Communication/Security Agreement"( "Notice") from Defendant Demer. The Notice

Defendant Demer's harassing filings have not gone unnoticed by the Court. In the Court's April 30, 2003 Order, the Court states, "the Court finds that Defendant Demer's repetitious presentation of incomprehensible or, possibly delusional, contentions amounts to harassment of the Court and of the other parties to the case." Further, the Court's May 7, 2003 Order finds that the Affidavit of Lawful Authority "appears to be designed for purposes of harassment." The provisions in Paragraph IV of the Order are meant to put an end to and to undo any damage caused by Defendant Demer's harassment of FTC personnel for carrying out their official duties.

---

asserts that Defendant Demer has a copyright or common law trademark in her own name and signature and that each of the FTC Officials has infringed those rights, presumably by naming her as a Defendant in the complaint and referring to her in other papers filed with the Court or in letters addressed or faxed to her. The Notice further purports to create a "self-executing security agreement" in property held by each of the FTC Officials, in the form of liquidated damages for the supposed copyright and trademark infringement. Defendant Demer states her intention to file U.C.C. Financing Statements with respect to the FTC Officials' property to "perfect" those security interests.

On January 22, 2003, each of the FTC Officials received a Civil Action Inquiry, Affidavit of Jacqueline Ann Demer©, by Special Visitation, Affidavit of Lawful Authority and Third Party Witness Statement Offered as Proof of Service and Certificate of Mailing from Defendant Demer (hereinafter, "Civil Action Inquiry"). Through the Civil Action Inquiry Defendant Demer charges the FTC Officials with unauthorized use of her purportedly protected name and signature. She further claims to have been robbed by the FTC Officials of her peace and dignity and irreversibly harmed by the filing of the Commission's suit. Finally, she asserts that failure to respond to her Civil Action Inquiry within 5 days will result in a judgment "non prosequitur" at common law, which will result in treble damages.

The Commission's General Counsel, by letter dated January 27, 2003, advised Defendant Demer that the Notice and Civil Action Inquiry she had sent to the FTC Officials were of no legal effect, and that she had no justifiable basis, factual or legal, for the filing of liens against the property of the FTC Officials. The General Counsel informed Defendant Demer that numerous courts had held the malicious filing of liens against federal officials to constitute harassment and attempted extortion, and demanded that she immediately cease such activity and take all steps necessary to insure that any such filed liens were removed.

## VI.     CONCLUSION

For the foregoing reasons, the plaintiff FTC respectfully requests that the Court enter the Proposed Order against Defendant Jacqueline A. Demer.


Dated: May 30, 2003                              _____/s/_____
                                                 PATRICIA F. BAK
                                                 ADAM B. FINE
                                                 JAMES REILLY DOLAN (BAR #09514)
                                                 Attorneys
                                                 Federal Trade Commission
                                                 600 Pennsylvania Avenue, N.W.
                                                 Washington, DC 20580
                                                 (202) 326-2842; (202) 326-3784 or (202) 326-3292 (ph.)
                                                 (202) 326-2558 (Fax)
                                                 ATTORNEYS FOR PLAINTIFF
                                                 FEDERAL TRADE COMMISSION

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May 2003, I caused a copy of the foregoing **Motion and Memorandum of Plaintiff Federal trade Commission for a Default Judgment Against Defendant Demer** to be served on all below listed defendants at the following addresses by first class mail, postage prepaid:

**For Defendant Jaguar Business Concepts, L.P.:**

| Wallace E. Akehurst | and | Jacqueline A. Demer |
|---|---|---|
| 2633 Monkton Rd. | | c/o Thomas Trainor, Notary Public |
| Monkton, MD 21111 | | 3000 Old Alabama Rd., #119-118 |
| | | Alpharetta, GA 30022 |
| | | As Member/Manager of Jaguar's General Partner, |
| | | Cheyenne Investment Alliance, L.L.C. |

**For Defendant Cheyenne Investment Alliance, L.L.C.:**

| Wallace E. Akehurst | and | Jacqueline A. Demer |
|---|---|---|
| 2633 Monkton Rd. | | c/o Thomas Trainor, Notary Public |
| Monkton, MD 21111 | | 3000 Old Alabama Rd., #119-118 |
| | | Alpharetta, GA 30022 |
| | | As Member/Manager of Jaguar's General Partner, |
| | | Cheyenne Investment Alliance, L.L.C. |

**For Defendant Jacqueline A. Demer:**

Jacqueline A. Demer
c/o Thomas Trainor, Notary Public
3000 Old Alabama Rd., #119-118
Alpharetta, GA 30022

_____/s/_____
Patricia F. Bak
Attorney for Plaintiff, Federal Trade Commission